**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JYRONE LUMPKIN,

      Plaintiff,

v.

                           Case No. 3:24-cv-1138-TJC-PDB

SERGEANT TOBY FORNSHELL,

      Defendant.

_____

## <u>ORDER</u>

### I.    Status

Plaintiff, an inmate of the Florida penal system, is proceeding on a pro se Amended Civil Rights Complaint (Doc. 20; Amended Complaint) against Sergeant Toby Fornshell. Plaintiff contends that on October 26, 2023, he "got into a heated conversation with a nurse and [Defendant] who forcefully esco[]rted [him] to the First Floor B-Wing Shower," where Defendant punched Plaintiff "on the back left side of [his] head" causing the "right side of [his] mouth [to] hit the shower frame door" and "knocked out/chipped" a tooth. <u>Id.</u> at 6. Based on these alleged actions, Plaintiff claims that Defendant violated his

Eighth and Fourteenth Amendment rights by using excessive force on him. Id. at 5.[1] Plaintiff seeks monetary damages as relief. Id. at 6.

Defendant filed a Motion to Dismiss Amended Complaint with Prejudice (Doc. 23; Motion). Defendant argues that Plaintiff failed to exhaust his administrative remedies before filing this case; he failed to disclose his litigation history; and his request for punitive damages is statutorily barred. See generally id. Plaintiff filed a Response to Motion to Dismiss (Doc. 26; Response). The Motion is ripe for review.

## II.    Exhaustion[2]

The Prison Litigation Reform Act (PLRA) requires that Plaintiff exhaust his available administrative remedies before pursuing a § 1983 claim about

---

[1] In the section of the Amended Complaint addressing the relief requested, Plaintiff states that he seeks "punitive damage[s] for mental health and psychological abuse [for] telling [him] d[ue] to [his] tooth being gone now [he] would be a better d*ck sucker which is also sexual harassment." Amended Complaint at 6. Plaintiff did not raise a "sexual harassment" claim in this case; he only raises an excessive force claim. Id. at 5. Regardless, his assertion is insufficient to state a claim. See Pete's Towing Co. v. City of Tampa, Fla., 648 F. Supp. 2d 1276, 1287 (M.D. Fla. 2009) ("[V]erbal threats and harassment are generally not actionable under § 1983. A threat constitutes an actionable constitutional violation only when the threat is so brutal or cruel as to shock the conscience or if the threat exerts coercive pressure on the plaintiff and [he] suffers the deprivation of a constitutional right."); see also Hernandez v. Florida Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (finding that the plaintiff's "allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim").

[2] Because the Court finds that this case is due to be dismissed for Plaintiff's failure to exhaust his administrative remedies, the Court need not address Defendant's other arguments.

prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). A prisoner need not "specially plead or demonstrate exhaustion in [his] complaint[]" because a "failure to exhaust is an affirmative defense under the PLRA[.]" Jones v. Bock, 549 U.S. 199, 216 (2007).

Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Jones, 549 U.S. at 211. While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017)[3] (per curiam) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

3

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an

4

administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the

5

boundaries of proper exhaustion"). The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code. §§ 33-103.005-103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

Pavao, 679 F. App'x at 824. Generally, an informal grievance "[m]ust be received within 20 days of when the incident or action being grieved occurred"; a formal grievance must be received within 15 calendar days of "[t]he date on which the informal grievance was responded to"; and a grievance appeal "[m]ust be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate." Fla. Admin. Code r. 33-103.011(1)(a), (b)(1), (c).

However, the ordinary three-step procedure does not always apply. For example, a prisoner may skip the informal grievance step and immediately file

6

a formal grievance for issues pertaining to various things, including a "grievance of an emergency nature" or a "medical grievance." Fla. Admin. Code r. 33-103.005(1). If a prisoner can bypass the informal grievance step, he must typically file the formal grievance with the warden within 15 days from the date on which the incident or action being grieved occurred. Fla. Admin. Code r. 33-103.011(1)(b). A response must be provided to the inmate within 20 days of receipt of the formal grievance. Fla. Admin. Code r. 33-103.006(6). "If an inmate is unsatisfied with the resolution of a formal grievance, he may appeal the grievance to the Office of the Secretary using Form DC1-303 (same form as a formal grievance)." Jenkins v. Sloan, 826 F. App'x 833, 836 (11th Cir. 2020) (citing Fla. Admin. Code r. 33-103.007). The grievance appeal to the Office of the Secretary must be received within 15 days from the date the response to the formal grievance is returned to the inmate. Fla. Admin. Code r. 33-103.11(c).

An inmate may also skip the informal and formal grievance steps and file a direct grievance with the Office of the Secretary, if the issue involves an emergency, reprisal, protective management, admissible reading material, release date calculations, banking issues, sexual abuse committed by the warden, or HIPAA violations. Fla. Admin. Code r. 33-103.007(3)(a). When a prisoner files a direct grievance with the Secretary, he must do so "within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred." Fla. Admin. Code r. 33-103.011(d).

7

Here, Defendant argues that Plaintiff filed only one grievance relating to the underlying incident with Defendant—an "emergency grievance" to the Secretary's Office on October 29, 2023.[4] Motion at 4. Defendant argues that because that grievance was "returned without action," and Plaintiff failed to file any other grievances relating to the incident, he failed to exhaust his administrative remedies prior to filing this case. See id. at 6-7.

The following is a summary of the evidence Defendant submitted to support his argument. Jeffrey McClellan, an Assistant Warden of Programs at Florida State Prison, authored a Declaration (Doc. 23-1), advising that between October 26, 2023, and October 31, 2024, Plaintiff did not submit any informal or formal grievances relating to the October 26, 2023 incident with Defendant. Id. at 1-2; see also id. at 5-6 (informal and formal grievance summaries). Further, Lawanda Sanders-Williams, an Operation Analyst I with the Bureau of Policy Management and Inmate Appeals, reviewed Plaintiff's grievance appeals filed between October 26, 2023, and October 31, 2024, and located one relevant grievance appeal submitted by Plaintiff on October 29, 2023. Doc. 23-2 at 1.[5] In that grievance appeal, Plaintiff states he was filing an "emergency

---

[4] Plaintiff dated the "emergency grievance" October 29, 2023, but it was not received by the Secretary's Office until November 13, 2023. See Doc. 23-2 at 7.

[5] Ms. Sanders-Williams's Declaration includes a scrivener's error. She states that the incident between Plaintiff and Defendant occurred on November 1, 2023 (Doc. 23-2 at 1), but she checked for grievance appeals filed between October 26, 2023, and October 31, 2024 (id.); the grievance appeal she attaches to her Declaration clearly

8

grievance" due to "retaliation by staff" at Florida State Prison. Id. at 7. He describes the incident that transpired with Defendant on October 26, 2023, and explains that he "was afraid to write a grievance d[ue] to being retaliated against again by staff members." Id. He concludes, however, that he has "written grievances to the IG Office as well as an informal to the institution on this same day." Id. at 8.

Plaintiff's "emergency grievance" was "returned without action."[6] Id. at 6. The response states:

> Note: This grievance is not accepted as a grievance of an emergency nature.
>
> Your appeal has been reviewed and evaluated. The subject of your grievance was previously referred to the Office of the Inspector General [(OIG)]. It is the responsibility of that office to determine the amount and type of inquiry that will be conducted. This inquiry/review may or may not include a personal interview with you. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.

---

reflects the incident occurred on October 26, 2023 (id. at 7); and she notes that Plaintiff authored the grievance appeal on October 29, 2023, days prior to November 1, 2023 (id. at 1).

The Court further notes that according to the grievance appeal log, the next grievance appeal filed by Plaintiff was received by the Secretary's Office on December 6, 2023. Doc. 23-2 at 4 (noting this grievance appeal was about "sexual harassment" and was approved). Neither party addresses this grievance appeal nor provides copies of it. Regardless, the Court found above that Plaintiff fails to state or raise a "sexual harassment" claim. See supra n.1. Thus, the Court assumes this grievance appeal is not relevant to the excessive force claim raised in this case.

[6] The response was authored on November 15, 2023, and "mailed/filed with agency clerk" on November 17, 2023. Doc. 23-2 at 6.

9

Id.

Plaintiff asserts that in his emergency grievance, he indicates that he filed an informal grievance on that same day, but the grievance process is "corrupt" and staff failed to properly process his informal grievance. See Response at 2-3, 5-7. He contends that "the only way" the OIG could have become aware of the incident to start an investigation "is if the institution received [his] formal or informal grievances at the institutional level and sent the claims and allegations to the [OIG]." Id. at 2-3.

Here, accepting Plaintiff's view of the facts as true, the Court finds dismissal for lack of exhaustion is not warranted at the first step of Turner. Thus, the Court proceeds to the second step and considers the parties' disputes about exhaustion and makes findings of fact.

Because Plaintiff's "emergency grievance" was "returned without action," this grievance cannot be said to have satisfied his exhaustion requirements. See Jones v. Inch, No. 3:21CV512-RV-HTC, 2021 WL 3134272, at *5 (N.D. Fla. June 21, 2021), rep. & recommendation adopted, No. 3:21CV512-RV-HTC, 2021 WL 3131675 (N.D. Fla. July 23, 2021) ("A grievance that is returned for failure to comply . . . cannot serve as an exhaustion of administrative remedies." (citing cases finding the same)). Indeed, filing a non-compliant grievance does not satisfy the exhaustion requirement regardless of whether it puts the institution "on notice" of the inmate's claims. See Woodford, 548 U.S. at 90 (recognizing

10

that the law requires "proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly") (internal quotations and citation omitted). And here, the Secretary's Office explicitly relied on a procedural defect—that Plaintiff's grievance did not qualify as an "emergency" and thus he could not bypass the first two steps in the grievance process—to return without action his "emergency grievance," rather than resolving the merits of Plaintiff's complaints. See Varner v. Shepard, 11 F.4th 1252, 1261 (11th Cir. 2021) (finding that a prisoner's "claim in his grievances [wa]s procedurally defaulted" because the prison "rejected the grievance as" untimely, thus explicitly relying on "the grievance's procedural defect as a basis for denying" it); see also Whatley v. Smith, 898 F.3d 1072, 1084 (11th Cir. 2018) (holding that to preserve an exhaustion defense, the prison must "explicitly rely on the grievance's procedural shortcomings as an adequate and independent ground for denying the grievance at the administrative level"). Thus, Plaintiff's "emergency grievance" fails to satisfy the exhaustion requirement.

To the extent Plaintiff attempts to demonstrate exhaustion by relying on the fact that the issue had been previously referred to the OIG for an investigation, such argument fails. Although the Secretary's Office's response notes that the subject of Plaintiff's "emergency grievance" was previously referred to the OIG, there is no evidence to suggest that the OIG's investigation

11

resulted from Plaintiff's proper use of the grievance process. Indeed, there is no record of Plaintiff submitting any other grievances relating to this issue. Plaintiff indicates in his "emergency grievance" that he submitted an informal grievance that same day and also submitted a grievance to the OIG. So the investigation may have stemmed from Plaintiff's complaint directly to the OIG. Or it could have resulted from the FDOC's regular practice of reviewing all uses of force. See Fla. Admin. Code R. 33-602.210(10)(a)-(f) (requiring the warden or his designee and the OIG to review every use of force to determine whether it was lawful and procedurally appropriate). Regardless, based on the facts presented here, the OIG investigation cannot act as a substitute for Plaintiff properly completing the grievance process. See Fleming v. Espino, No. 3:20-cv-853-MMH-JRK, 2021 WL 5083743, at *7 (M.D. Fla. Nov. 2, 2021) (finding that plaintiff had failed to exhaust his remedies since "[t]here is no evidence supporting even an inference that the OIG's investigation was a result of [the plaintiff] filing a grievance"); see also Hersh v. Scott, No. 3:22-cv-408-BJD-LLL, 2023 WL 2242551, at *4 (M.D. Fla. Feb. 27, 2023) (finding OIG's investigation was "not relevant to the exhaustion analysis because there is no indication that investigation resulted from [the p]laintiff having filed a proper grievance"). Indeed, that the Secretary's Office's response indicates the issue was already referred to the OIG indicates only that the OIG "may have substantively reviewed [Plaintiff's] complaint outside of the grievance process, not that the

12

Secretary's Office addressed and resolved the merits of [Plaintiff's] excessive force claims." Moultrie v. James, No. 24-12561, 2025 WL 3528695, at *4 (11th Cir. Dec. 9, 2025) (citing Woodford, 548 U.S. at 90, 93).

To the extent Plaintiff argues that the grievance process was unavailable to him because he submitted an informal grievance that was never logged or responded to, his argument likewise fails. When an inmate does not receive a timely response to an informal or formal grievance, the inmate is permitted to proceed to the next level of the grievance process. See Fla. Admin. Code r. 33-103.011(4) ("Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process. If this occurs, the complainant must clearly indicate this fact when filing at the next step."). Thus, if Plaintiff submitted an informal grievance at the institutional level and did not timely receive a response, Plaintiff could have proceeded to the next level of review and "clearly indicate[d]" such circumstances. Plaintiff did not do that here. See Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 204 (11th Cir. 2018) ("The grievance procedure permitted [the plaintiff] . . . to proceed with the next step in the three-step process after the expiration of the prison's time to respond to a grievance," and "[w]hile the PLRA does not require prisoners to grieve a breakdown in the grievance process, [the plaintiff] has not shown such a breakdown[, a]nd the PLRA required him to pursue the procedures that were

13

available to him"). The record reflects that Plaintiff had access to all levels of the grievance process, <u>see</u> Doc. 23-1 at 5-6; Doc. 23-2 at 4, but he failed to properly comply with the grievance procedures before filing this case.

Accordingly, it is **ORDERED**:

1.     Defendant's Motion to Dismiss Amended Complaint with Prejudice (Doc. 23) is **GRANTED to the extent** that this case is **DISMISSED without prejudice** for Plaintiff's failure to exhaust his administrative remedies. The Motion is otherwise **DENIED as moot**.

2.     The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of March, 2026.



TIMOTHY J. CORRIGAN
Senior United States District Judge

JAX-3 3/13
c:
Jyrone Lumpkin, #N20850
Counsel of Record

14